UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
-----------------------------X  Docket#
UNITED STATES OF AMERICA,     : 17-cr-00459-AMD-1
                              :
    - versus -                : U.S. Courthouse
                              : Brooklyn, New York
WILLIAM KELLY,                :
              Defendant       : August 29, 2017
-----------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR PLEADING
BEFORE THE HONORABLE ROBERT M. LEVY
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government**:          **Bridge M. Rohde, Esq.**
                                 United States Attorney

                            BY:  **David K. Kessler, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant**:           **Brendan R. McGuire, Esq.**
                                 **Margaret Artz, Esq.**
                                 Wilmer Cutler Pickering Hale
                                 and Dorr LLP
                                 250 Greenwich Street
                                 7 World Trade Center
                                 New York, NY 10007



**Transcription Service**:       **Transcriptions Plus II, Inc.**
                                 61 Beatrice Avenue
                                 West Islip, New York 11729
                                 laferrara44@gmail.com

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

Proceedings

1          THE CLERK:  Criminal Cause for a Pleading in

2    the matter of United States v. William Kelly, case number

3    17-cr-459.

4               Please state your appearances for the record.

5          MR. KESSLER:  Good afternoon, your Honor.

6          David Kessler for the United States.

7          THE COURT:  Good afternoon.

8          MR. MCGUIRE:  Good afternoon, your Honor.

9          Brendan McGuire and Margaret Artz on behalf of

10   Mr. Kelly, who is here with us today.

11         THE COURT:  Good afternoon.  Good afternoon,

12   Mr. Kelly.  Can you say your name for the record, please?

13         THE DEFENDANT:  William Kelly.  I will have you

14   placed under oath in just a moment.

15   W I L L I A M   K E L L Y,

16      called as a witness, having been first duly sworn,

17      was examined and testified as follows:

18         THE COURT:  What is Mr. Kelly going to do

19   today?

20         MR. MCGUIRE:  Your Honor, Mr. Kelly's intention

21   is to plead guilty to an information to be filed today.

22         THE COURT:  Okay.  Is he planning on waiving

23   indictment?

24         MR. MCGUIRE:  He is.

25         THE COURT:  And has he consented to have a plea

3

Proceedings

1   taken before a magistrate judge?

2           MR. MCGUIRE:  He has.

3           THE COURT:  All right, Mr. Kelly, you're under

4   oath.  I'm going got ask you a lot of questions.  If

5   there is anything that you don't understand or you would

6   like to discuss with your attorney, please feel free to

7   do that privately.

8           If you have any questions you would like to ask

9   me, you can also ask me, as well.

10          Do you understand?

11          THE DEFENDANT:  Yes, sir.

12          THE COURT:  All right.  So the first thing

13  we're going to do here is talk about the waiver of

14  indictment.  You signed a form here that says that you

15  are willing -- you're waiving indictment in this case.

16          Do you understand what that means?

17          THE DEFENDANT:  Yes.

18          THE COURT:  All right.  And did you discuss

19  that with your counsel?

20          THE DEFENDANT:  Yes.

21          THE COURT:  All right.  So do you understand

22  that you are-- I'll just read the waiver here.  You've

23  been accused of one or more offenses punishable by

24  imprisonment for more than one year.

25          I'm going to advise you that you have a right

4

Proceedings

1   to have the charges against you presented to a grand jury

2   to see whether there's probable cause, meaning there's

3   sufficient evidence to believe it's probable that you

4   committed the crime.  And that's the grand jury's a

5   protection for citizens.  It allows the charges to be

6   screened, not just by a prosecutor but also by your

7   peers, a grand jury.

8            You have a right to have the charges against

9   you screened by a grand jury and have them make an

10  independent determination whether or not there is

11  probable cause to bring them.

12           Do you understand?

13           THE DEFENDANT:  Yes.

14           THE COURT:  And if you don't -- well, do you

15  understand also that the charges against you are

16  potentially serious?

17           THE DEFENDANT:  Yes.

18           THE COURT:  And that there is a possibility

19  that a grand jury -- again, I don't know the facts of

20  your case, but there is a possibility that a grand jury

21  might find that there's not probable cause to indict you.

22           Do you understand that?

23           THE DEFENDANT:  Yes.

24           THE COURT:  And that if you proceed by

25  information, you're giving up your right to have the

5

                              Proceedings

1    grand jury screen the charges against you and you will be

2    proceeding with criminal charges brought against you as

3    written in an information that's been written by the

4    prosecution.

5                    THE DEFENDANT:  Yes.

6                    THE COURT:  Have you seen the information in

7    this case?

8                    THE DEFENDANT:  Yes.

9                    THE COURT:  Do you understand what the charges

10   are?

11                   THE DEFENDANT:  Yes.

12                   THE COURT:  And just to make sure that you

13   understand, if you proceed by information, you would be

14   charged information with access device fraud and the

15   information states, "In or about and between November

16   2016 and May 2017, both dates being approximate and

17   inclusive, within the Eastern District of New York,"

18   that's our jurisdiction here, "and elsewhere, the

19   defendant William Kelly, together with others, did

20   knowingly and with intent to defraud, produce, traffic

21   in, have control or custody of and possess device making

22   equipment in a manner affecting interstate and foreign

23   commerce."

24                   Do you understand that's the charge --

25                   THE DEFENDANT:  Yes.

6

Proceedings

1          THE COURT:  -- that will proceed under?  And
2     you're waiving your right or giving up your right to have
3     this charge or similar charges presented to a grand jury
4     to determine that there is probable cause.
5          THE DEFENDANT:  Yes.
6          THE COURT:  Okay.  Are you making this decision
7     voluntarily?
8          THE DEFENDANT:  Yes.
9          THE COURT:  Anybody force you or threaten you
10    to make you agree to waive indictment?
11         THE DEFENDANT:  No.
12         THE COURT:  Anybody promise you anything to
13    induce you to do so?
14         THE DEFENDANT:  No.
15         THE COURT:  So do you understand the charge in
16    the information?
17         THE DEFENDANT:  Yes.
18         THE COURT:  What is the government prepared to
19    prove if this case were to go to trial?
20         MR. KESSLER:  Your Honor, the government is
21    prepared to prove that during the time period in the
22    information, the defendant possessed one or more ATM
23    skimming devices, basically devices that help download
24    information about individual's bank account numbers,
25    personal identification numbers and things like that,

7

Proceedings

1  from ATM machines and to re-encode them onto other cards,

2  so that card -- those cards can be used to withdraw

3  money.

4         So the government would prove that the

5  defendant possessed ATM or the skimming equipment, that

6  is the equipment needed to make the cards, to further the

7  access device fraud.

8         The evidence includes photographs of the

9  defendant involved in ATM skimming activity and the

10  defendant's post-arrest statement that he possessed

11  device making equipment.

12         THE COURT:  And would the government also be

13  able to prove that he did so in a manner affecting

14  interstate and foreign commerce?

15         MR. KESSLER:  Yes, so the ATM skimming

16  operation itself involves taking and using United States

17  currency.  It involves electronic signals that run from

18  ATM devices back to servers that connect with the banks,

19  the device making equipment consists of components that

20  come from multiple states and then just based on the text

21  in the complaint, the defendant has been multiple states

22  with device making equipment, both on a photograph in I

23  believe Pennsylvania and then by his own statements in

24  Brooklyn.

25         THE COURT:  And there is also an allegation

8

Proceedings

1    about foreign commerce, as well?

2              MR. KESSLER:  There is no specific additional

3    allegation about foreign commerce.  So we charge in the

4    conjunctive but we can prove in the disjunctive.

5              THE COURT:  Okay.  I guess we'll wait for that.

6    Okay.

7              Do you have any questions about what the

8    government just explained?

9              THE DEFENDANT:  No.

10             THE COURT:  All right.  What is your full name?

11             THE DEFENDANT:  William Anthony Kelly.

12             THE COURT:  How old are you?

13             THE DEFENDANT:  32.

14             THE COURT:  What's your last level of

15   schooling?

16             THE DEFENDANT:  Eighth grade

17             THE COURT:  Are you now or have you recently

18   been in the care of a doctor or a psychiatrist?

19             THE DEFENDANT:  No.

20             THE COURT:  In the past 24 hours, have you

21   taken any kind of medicine or pills?

22             THE DEFENDANT: No.

23             THE COURT:  Narcotic drugs or alcoholic

24   beverages?

25             THE DEFENDANT:  No.

9

                          Proceedings

1          THE COURT:  Have you ever been hospitalized or

2    treated for alcoholism, narcotic addition or a mental or

3    emotional problem?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Could you explain?

6          THE DEFENDANT:  I've been hospitalized and

7    treated for opiate abuse.

8          THE COURT:  When was that?

9          THE DEFENDANT:  2011.

10         THE COURT:  And how long were you in?

11         THE DEFENDANT:  I think 30 days.

12         THE COURT:  And since then?

13         THE DEFENDANT:  No.

14         THE COURT:  No treatment or hospitalization?

15         THE DEFENDANT:  Oh, I was on methadone

16   treatment up until 2016.

17         THE COURT:  So at this point, is your mind

18   clear?

19         THE DEFENDANT:  Yes.

20         THE COURT:  Do you understand why you're here

21   and what's happening here today?

22         THE DEFENDANT:  Yes.

23         THE COURT:  To your attorney, have you

24   discussed this matter fully with your client?

25         MR. MCGUIRE:  I have, your Honor.

10

Proceedings

1       THE COURT:  Does he understood the rights he

2  would be waiving by pleading guilty?

3       MR. MCGUIRE:  He does.

4       THE COURT:  Is he capable of understanding the

5  nature of these proceedings?

6       MR. MCGUIRE:  He is.

7       THE COURT:  Do you have any doubts as to his

8  competence to plead at this time?

9       MR. MCGUIRE:  I do not.

10      THE COURT:  Have you advised him of the

11  possible maximum and minimum sentence and fine and other

12  penalties that he is facing?

13      MR. MCGUIRE:  I have.

14      THE COURT:  Have you explained to him how the

15  maximum fine and the restitution provisions work?

16      MR. MCGUIRE:  I have, your Honor.

17      THE COURT:  Did you advise him that there's no

18  guarantee of what his sentence will be?

19      MR. MCGUIRE:  I did, your Honor.

20      THE COURT:  And have you advised him that if

21  he's not a citizen, he could face deportation as a result

22  of the guilty plea?

23      MR. MCGUIRE:  He is a citizen.  So I did not

24  advise him of that.

25      THE COURT:  I am going to advise you of that

Proceedings

1   because I have to.

2              Do you understand?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Okay.  And does he understand there

5   is no guarantee what the ultimate sentence will be in

6   this case?

7              MR. MCGUIRE:  We covered that at length, your

8   Honor.

9              THE COURT:  Any questions about what your

10  lawyer said?

11             THE DEFENDANT:  No.

12             THE COURT:  Have you discussed your case fully

13  with him fully?

14             THE DEFENDANT:  Yes.

15             THE COURT:  Are you satisfied to have him

16  represent you?

17             THE DEFENDANT:  Yes.

18             THE COURT:  Okay.  So I want to be sure you

19  understand your rights because you do have a number of

20  constitutional and federal rights, statutory rights, that

21  you will give up if you plead guilty.

22             Do you understand that you don't have to plead

23  guilty?

24             THE DEFENDANT:  Yes.

25             THE COURT:  It's your right to plead not guilty

12

Proceedings

1   if you wish.  If you continue to plead not guilty, it's

2   your right under the Constitution and laws of the United

3   States to a speedy, public trial, by jury with the help

4   of your lawyers on the charges contained in the

5   information.

6              Do you understand that?

7              THE DEFENDANT:  Yes.

8              THE COURT:  And if at any point, you are unable

9   to afford to retain an attorney, the Court will make sure

10  that you have an attorney to represent you at no cost to

11  you, all the way through trial and if you're convicted,

12  through an appeal. So basically at all stages of the

13  proceedings if you need it.

14             Do you understand?

15             THE DEFENDANT:  Yes.

16             THE COURT:  At your trial, you would be

17  presumed innocent.  The government would have to overcome

18  that presumption and prove your guilt by competent

19  evidence and persuade a jury beyond a reasonable doubt of

20  any charges that it wishes to convict you of.

21             Do you understand that?

22             THE DEFENDANT:  Yes.

23             THE COURT:  Even if you did everything that the

24  government has alleged, you still have a right to a trial

25  and it is possible that the jury might find you not

13

Proceedings

1  guilty if the jury is not persuaded beyond a reasonable

2  doubt that you did it.

3          Do you understand?

4          THE DEFENDANT:  Yes.

5          THE COURT:  Proof beyond a reasonable doubt, do

6  you understand what that standard means and how it works?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Okay.  And do you understand that

9  you would not have to present any evidence to prove that

10  you're innocent?  You wouldn't have to present any

11  defense at all.  The burden is entirely on the government

12  to prove beyond a reasonable doubt that you are guilty?

13          THE DEFENDANT:  Yes.

14          THE COURT:  Okay.  Any questions about anything

15  so far?

16          THE DEFENDANT:  No.

17          THE COURT:  If you decide to go to trial, the

18  government would have to bring its witnesses and its

19  evidence to court.  The testimony of its witnesses would

20  be in your presence.  Your lawyers would have a right to

21  cross-examine them, object to the government's evidence,

22  present evidence in your defense, and compel witnesses

23  who you wished to call to appear at trial.

24          Do you understand that?

25          THE DEFENDANT:  Yes.

14

Proceedings

1          THE COURT:  And if you do go to trial, you
2     would have a choice whether or not to testify.  It's your
3     right to testify in your defense but it's also your right
4     under the Fifth Amendment to remain silent and not to
5     incriminate yourself.

6               Do you understand how that works?

7               THE DEFENDANT:  Yes.

8          THE COURT:  So if you decided to go to trial
9     but not to testify, the Court would instruct the jurors
10    that they couldn't hold that against you and assume that
11    you're guilty because you didn't speak up in your own
12    defense.

13              Do you understand?

14              THE DEFENDANT:  Yes.

15              THE COURT:  But if you do plead guilty and the
16    Court accepts your guilty plea, you will be giving up
17    your rights to a trial, your right to remain silent, all
18    of the other rights that I've just explained.  You won't
19    have a trial at all.  The Court will just enter a
20    judgment that you're guilty based on what you say here
21    today.

22              Do you understand?

23              THE DEFENDANT:  Yes.

24              THE COURT:  And in order for me to recommend
25    that the Court accept your guilty plea -- oh, I don't

15

Proceedings

1  think we've gone through the consent.  So we're going to

2  have to do that.

3          So anyway, in order for me to recommend and the

4  Court to determine whether or not to accept your guilty

5  plea, the Court has to be convinced that you did, in

6  fact, do what you're charged with.

7          And so, I'm going to have to ask you some

8  questions.  You're going to have to admit your guilt.

9  And when you do that, you give up your right to remain

10  silent and not to incriminate yourself.

11          Do you understand?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Okay.  So I do have a consent form

14  here and in that form, it says that you agree to have me,

15  a magistrate judge, hear your guilty plea and make a

16  recommendation to Judge Donnelly whether or not to accept

17  it.  You don't' have to have me hear your plea.  Judge

18  Donnelly would be perfectly happen to hear it.  There

19  will be no harm or prejudice to you -- excuse me -- if

20  you chose to do that.  No one would be offended.

21          Do you understand?

22          THE DEFENDANT:  Yes.

23          THE COURT:  All right.  Counsel, did you speak

24  to your client about consent?

25          MR. MCGUIRE:  I did, your Honor.

16

Proceedings

1              THE COURT:  Are you satisfied that his consent
2  to have me hear the plea is knowing and voluntary?
3              MR. MCGUIRE:  I am.
4              THE COURT:  And did you sign this consent form?
5              THE DEFENDANT:  Yes.
6              THE COURT:  All right.  Okay.  Do you have any
7  questions about anything we said so far?
8              THE DEFENDANT:  No.
9              THE COURT:  So are you willing to give up your
10  right to a trial and your other rights?
11             THE DEFENDANT:  Yes.
12             THE COURT:  And do you wish to plead guilty?
13             THE DEFENDANT:  Yes.
14             THE COURT:  Okay.  So I understand you're
15  pleading guilty pursuant to an agreement that's been
16  marked as Court Exhibit 1.  I have a signed copy here, I
17  believe that's dated today, August 29th.
18             Is this the only agreement at this time between
19  the government and the defense?
20             MR. KESSLER: Yes, your Honor, the written plea
21  agreement and then the last few pages which are labeled
22  Exhibit A, in total constitute the agreement between the
23  government and the defense.
24             MR. MCGUIRE:  That's correct, your Honor.
25  We've reviewed both the agreement itself, as well as the

17

Proceedings

1  conditions attached in the exhibit with Mr. Kelly.

2          THE COURT:  And are you satisfied he

3  understands the agreement and the conditions?

4          MR. MCGUIRE:  I am.

5          THE COURT:  All right.  Mr. Kelly, have you

6  discussed the agreement with your lawyers?

7          THE DEFENDANT:  Yes.

8          THE COURT:  Have you had a chance to read it

9  yourself?

10          THE DEFENDANT:  Yes.

11          THE COURT:  Do you understand it all?

12          THE DEFENDANT:  Yes.

13          THE COURT:  Is there anything in it --

14  sometimes it's complicated.  Is there anything in the

15  agreement that you would like to ask either me or your

16  lawyer about at this time?

17          THE DEFENDANT:  No.

18          THE COURT:  And so you feel comfortable with

19  it?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Okay.  So paragraph 1 says that

22  you'll waive indictment, which you've done and plead

23  guilty to an information to be filed in this district

24  which I read to you and which Mr. Kessler explained.

25          And if you do that, you are facing charges of a

Proceedings

1  violation of 18 USC 1029(a)(4) which is use of an access

2  -- which is access device fraud.

3          If you do plead guilty, the charge carries with

4  it the following penalties under the statute.  A minimum

5  term of imprisonment of zero years in prison and a

6  maximum term of imprisonment of 15 years in prison.

7          Do you understand that?

8          THE DEFENDANT:  Yes.

9          THE COURT:  And if you are sentenced to prison,

10  you can be sentenced to what's called supervised release

11  after you are released for a maximum of three years.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  And do you understand what that

15  means?

16          THE DEFENDANT:  Yes.

17          THE COURT:  So you are released on conditions,

18  and supervised by the probation department.  If you

19  violate any condition of your release, there is a

20  separate penalty from the sentence that you would get

21  from the guilty plea.  And that is you may be sentenced

22  to up to two separate years, additional years, without

23  credit for the time you had been in prison on this case

24  before you're released or the time you had served on

25  post-release supervision.

19

Proceedings

1              Do you understand that?

2              THE DEFENDANT:  Yes.

3              THE COURT:  Do you have any questions about

4    anything so far?

5              THE DEFENDANT:  No.

6              THE COURT:  All right.  There's a maximum fine

7    of the greater of $250,000 or twice the pecuniary loss or

8    twice the pecuniary gain from the offense.

9              Do you understand that?

10             THE DEFENDANT:  Yes.

11             THE COURT:  There's a provision for

12   restitution.  It is mandatory in the full amount of each

13   victim's losses as determined by the Court.

14             Do you understand that?

15             THE DEFENDANT:  Yes.

16             THE COURT:  And there's a fee called a special

17   assessment of $100 that also is payable to the Court.

18             THE DEFENDANT:  Yes.

19             THE COURT:  Okay.  Any questions?

20             THE DEFENDANT:  No.

21             THE COURT:  Sentencing.  Do you understand what

22   the sentencing guidelines are?

23             THE DEFENDANT:  Yes.

24             THE COURT:  All right.  So they're basically

25   rules or guides that help Judge Donnelly decide how to

Proceedings

1   sentence you.  She is going to calculate your guideline

2   range.  She needs to consider them but she doesn't have

3   to sentence you entirely based on the guidelines.  There

4   are other factors, as well, that she has to consider.

5           The guidelines are just one factor.  In

6   addition to those factors, she also has to consider under

7   USC 3553(a), such things as the circumstances of the

8   offense, your background, your respect for the law, what

9   would be fair or just punishment, deterrence, protecting

10  the public from further crimes and your individual need

11  for what's called effective correctional treatment.

12          Do you understand that?

13          THE DEFENDANT:  Yes.

14          THE COURT:  All right.  So as I said, there's

15  no guarantee what your guideline range will be or you'll

16  be sentenced within the guideline range or what your

17  sentence will be.  You will not be able to take back your

18  guilty plea, even if the sentence is not within the

19  guideline range.

20          Do you understand?

21          THE DEFENDANT:  Yes.

22          THE COURT:  Okay.  Any questions?

23          THE DEFENDANT:  No.

24          THE COURT:  All right.  Paragraph 2 discusses

25  the guidelines in this case.  Since we don't know what

Transcriptions Plus II, Inc.

21
Proceedings

1  Judge Donnelly is going to determine your guideline range

2  to be, anything that you've heard about the guidelines is

3  just an estimate at this point, as it pertains to you.

4          Paragraph 2 contains I believe the government's

5  guideline estimate, is that correct?

6          MR. KESSLER:  Yes.

7          THE COURT:  Would you put that on the record

8  please?

9          MR. KESSLER:  Yes.  There's an adjusted offense

10  level of eight which is computed by taking a base offense

11  level of six from 2(b)(1.1)(A)(2) of the guidelines, a

12  two point enhancement for use of access devices, no

13  enhancement for loss amount, and a total of eight.

14          Then carrying over in the agreement from page 2

15  to page 3, assuming the defendant falls in criminal

16  history category one, that would lead to a range of

17  imprisonment of zero to six months.

18          The defendant would then, based on his plea

19  today, be entitled to a two point reduction for

20  acceptance of responsibility.

21          THE COURT:  And in paragraph -- is that

22  agreeable to --

23          MR. MCGUIRE:  It is, your Honor.

24          THE COURT:  Okay.  Do you understand what the

25  government said?

22

Proceedings

1                THE DEFENDANT:  Yes.

2                THE COURT:  Again, there's no guarantee.  This

3     is just what the government estimates at this point.

4                At the end of paragraph 2, however, there's

5     also an agreement that the -- I'll just read it out --

6     "Pursuant to Rule 11(c)(1)(B) of the Federal Rules of

7     Criminal Procedure, based on information now known to the

8     parties, the parties agree to jointly recommend to the

9     Court that a sentence of five years probation with the

10    special conditions reflected in Exhibit A to this

11    agreement is appropriate.  However, that recommendation

12    shall not be binding upon the Court."

13               Do you understand that?

14               THE DEFENDANT:  Yes.

15               THE COURT:  Any questions at all?

16               THE DEFENDANT:  No.

17               THE COURT:  Okay.  Anything anyone would like

18    to add about that agreement?

19               MR. KESSLER:  No.

20               MR. MCGUIRE:  No, your Honor.

21               THE COURT:  Okay.  Paragraph 3 says that Mr.

22    Kelly, you agree not to file an appeal or otherwise

23    challenge your conviction or sentence if you receive a

24    term of imprisonment of six months or less.  And/or a

25    term of probation of five years or less and/or any of the

23

Proceedings

1   special conditions listed in Exhibit A.

2              Do you understand that?

3              THE DEFENDANT:  Yes.

4              THE COURT:  Is there anything else in this

5   agreement that any parties would like to place on the

6   record?

7              MR. KESSLER:  No, your Honor.

8              MR. MCGUIRE:  No, your Honor.

9              THE COURT: Do you have any questions for me or

10  for your lawyer before we proceed?

11             THE DEFENDANT:  No.

12             THE COURT:  Are you ready to plead?

13             THE DEFENDANT:  Yes.

14             THE COURT:  Is there any reason why Mr. Kelly

15  should not plead guilty to the information?

16             MR. MCGUIRE:  No, your Honor.

17             THE COURT:  So, Mr. Kelly, as to the

18  information, the sole charge of access device fraud, how

19  do you plead to Count 1; guilty or not guilty?

20             THE DEFENDANT:  Guilty.

21             THE COURT:  Are you pleading guilty

22  voluntarily?

23             THE DEFENDANT:  Yes.

24             THE COURT:  Has anybody forced you or

25  threatened you to make you agree to plead guilty?

Proceedings

1          THE DEFENDANT:  No.

2          THE COURT:  Did anybody promise you anything

3   that's not in the agreement?

4          THE DEFENDANT:  No.

5          THE COURT:  Has anybody promise you what your

6   sentence will be?

7          THE DEFENDANT:  No.

8          THE COURT:  All right.  So the information says

9   that in or about and between November 2016 and May 2017

10  within the Eastern District of New York, you did

11  something.  What is it you did?

12         THE DEFENDANT:  I possessed an ATM skimming

13  device.

14         THE COURT:  And what did you do with it?

15         THE DEFENDANT:  I used it to obtain credit card

16  information, so I could copy -- make new cards and remove

17  money from bank accounts.

18         THE COURT:  Okay.  And you did that using an

19  ATM?

20         THE DEFENDANT:  Yeah.

21         THE COURT:  Okay.  It is charged that you did

22  this together with others.  Is that, in fact -- did you

23  do this alone or did you do this with others?

24         THE DEFENDANT:  With others.

25         THE COURT:  Is there anything else that the

25

Proceedings

1   government thinks should be placed on the record?

2           MR. KESSLER:  No, except to the extent my

3   previous discussion addressed the interstate commerce

4   proof --

5           THE COURT:  Right.

6           MR. KESSLER:  -- that is not addressed by Mr.

7   Kelly.

8           THE COURT:  And that's incorporated by

9   reference.

10          MR. KESSLER:  That is incorporated by

11  reference.

12          THE COURT:  Yes.

13          MR. MCGUIRE:  We do not dispute that.

14          THE COURT:  Okay.  Anything else the defense

15  thinks should be added at this point?

16          MR. MCGUIRE:  No, your Honor.

17          THE COURT:  Okay.  Mr. Kelly, I find that

18  you're acting voluntarily, you fully understand your

19  rights, the charges against you, the rights you're giving

20  up by pleading guilty, the consequences of a guilty plea,

21  including the possible sentence, fine and other

22  conditions, restitution -- well, everything that I

23  mentioned earlier.  That you understand there's no

24  guarantee what your sentence will be or even what your

25  guideline range will be and that there is a factual basis

26
Proceedings

1  for the plea, that you did, in fact, commit the crime of

2  access device fraud as alleged in the information.

3          I, therefore, recommend that the Court accept

4  your plea of guilty to the information.

5          THE CLERK:  Sentencing will occur on December

6  13th, 2017 at 10:30 a.m. before Judge Donnelly.

7          THE COURT:  So, do you understand there will be

8  a probation investigation report.  You'll be meeting with

9  the probation department.  They will interview you and

10 you have the right to have your lawyer there.

11         You will have an opportunity to comment on the

12 report and so will the government and then Judge Donnelly

13 will make a ruling.

14         Any questions?

15         THE DEFENDANT:  No.

16         THE COURT:  Anything else from any party?

17         MR. KESSLER:  No.

18         MR. MCGUIRE:  No, your Honor.

19         THE COURT:  Okay.  So there's a detention order

20 in effect, correct?  There's nothing else that needs to

21 be done from the Court at this point?

22         MR. KESSLER:  My understanding is there is no

23 bail application today.

24         MR. MCGUIRE:  There is not.

25         THE COURT:  Okay.

27

Proceedings

1          MR. MCGUIRE:  Thank you.

2          THE COURT:  All right.  Thank you.  Good luck.

3          MR. KESSLER:  Thank you.

4          THE COURT:  Mr. Kessler, are you filing the

5     information or are we?

6          MR. KESSLER:  This is always a matter of

7     confusion to me.  I think -- I am happy to file it.  My

8     understanding it's normally  your clerk is the one who

9     files it but --

10         THE COURT:  We are very happy to file it.

11         MR. KESSLER:  Okay.  Probably safer.

12              (Matter concluded)

13                    -oOo-

14

15

16

17

18

19

20

21

22

23

24

25

28

# C E R T I F I C A T E

        I, LINDA FERRARA, hereby certify that the
foregoing transcript of the said proceedings is a true
and accurate transcript from the electronic sound-
recording of the proceedings reduced to typewriting in
the above-entitled matter.

        I FURTHER CERTIFY that I am not a relative or
employee or attorney or counsel of any of the parties,
nor a relative or employee of such attorney or counsel,
or financially interested directly or indirectly in this
action.

        IN WITNESS WHEREOF, I hereunto set my hand this
**12th** day of **September**, 2017.

                        _Linda Ferrara_
                        Linda Ferrara

                        CET**D 656
                        Transcriptions Plus II, Inc.